## P. J. WILKINSON v. JOHN A. JOHNSON.

### No. 3152.

1. **Charge Erroneous in Assuming a Controverted Fact.**—Suit by contractor for balance on a building contract; defense, payment, etc. The defendant had delivered a buggy in part payment. The plaintiff acknowledged receiving it and gave its value at $75. The defendant testified the buggy was worth $150. The court directed the jury to allow the defendant a credit of $75, stating in the charge, "this sum being the admitted value by plaintiff of the buggy delivered to him by the defendant." This is ground for reversal.

2. **Failure to Submit an Issue.**—The failure to submit an issue made by the pleadings and evidence will not be grounds for reversal where no request was made that such issue be submitted.

3. **Building Contract—Extras—Limitation.**—A building contract included specifications for the building and a stipulated price. It further provided, "for all *extras* above the contract and for all changes that might be made in the plans and specifications." In a suit for value of the extras and changes, *held*, that they were simply incidents of the main contract and were contemplated therein. Payment therefor would become due upon completion of the building, and limitation of two years would not apply, the main contract being in writing.

APPEAL from Dallas. Tried below before Hon. CHAS. FRED. TUCKER. The opinion states the case.

*S. H. Russell*, for appellant.—1. A charge that instructs the jury to find a particular sum, when there is evidence warranting the finding of another or different sum, invades the province of the jury, and is erroneous. Cobb v. Beall, 1 Texas, 346, 347.

2. The issue of settlement and payment was distinctly raised by the pleadings, and evidence admitted sustaining said issue. It was therefore the duty of the court to submit that question to the jury. Barkley v. Tarrant County, 53 Texas, 257.

3. If payment for the extras and changes was due at the time they were made, or was due when the building was completed, then under oral contract the two years statute still applies. Sayles' Civ. Stats., arts. 3204, 3205; Jones v. Lewis, 11 Texas, 363–365.

No brief for appellee reached the Reporter.

FISHER, JUDGE, *Section B.*—On the 30th day of May, 1888, appellee filed his original petition in the District Court of Dallas County, Texas, against appellant, and on the 6th day of July, 1888, he filed his first amended original petition, in which he alleges, that about the 1st day of January, 1884, he entered into a written contract with appellant to build for him a two-story brick building in the city of Dallas, for which appellant agreed to pay appellee the sum of $15,000, and for all extras above said contract price, and for all changes that might be made in the plans and specifications under which said building was to be erected; that said building was to be completed by November 1, 1884; that appellee, in accordance with the provisions of said contract, plans, and specifications, completed said building about November 1, 1884; that under said contract, etc., the iron work to be used in said building was to be manufactured in Dallas, Texas; that appellant, becoming dissatisfied with Dallas iron, requested appellee to substitute St. Louis iron, which appellee did at an extra expense of $245; that the roof of said building was changed from a half-hip to a flat roof at the request of appellant, at an extra expense to appellee of $88.20; that appellee at the request of appellant made a change in the wainscoting in said building, at an extra cost to appellee of $103; that in addition to the plans and specifications, at the instance of appellant, appellee put in said building twenty-five sets of window blinds at $12.50 each, or $312.50; that the total expense of the extras and changes incurred by appellee at the request of appellant amounted to $748.70; that upon the completion of said building appellee presented to appellant the amount of appellee's bill for said extras and changes, which appellant acknowledged to be due and promised to pay but which he failed and refused to pay, or any part thereof.

Appellant answered:

1. A general demurrer.

2.  Special exceptions, among which appellant pleaded that appellee's cause of action was barred by the statute of limitation.

3.  A general denial, and pleaded specially that appellant upon the completion of said building had a settlement with appellee and paid him in full for all demands for said building; that he held appellee's receipt for the same, and pleaded said settlement as a complete bar to appellee's cause of action.  He further pleaded the statute of limitations of two and four years.

Appellee filed his first supplemental petition on January 9, 1890, and excepted to appellant's amended answer setting up payment and settlement, and says that the same is vague, general, and indefinite in failing to show how much was paid on final settlement, and when it was paid; and further pleaded a general denial to appellant's answer, except what was admitted in his original petition, but specially sets up that he did give appellant a receipt for balance due him (appellee) by appellant, but that said receipt was obtained from him through the fraud of appellant, as follows: That appellant had been convicted in a large number of gaming cases, and was about to be incarcerated because of an inability to pay the fines, and to pay them was compelled to borrow money on the building in question, but could not borrow while any mechanic's liens existed, and under the pretext that he was compelled to negotiate a loan in the circumstances alleged, he (appellant) obtained from appellee the receipt mentioned, and at the time of obtaining the receipt appellant promised to pay appellee the balance due on said contract and the changes made thereunder within a short time, and did pay appellee certain sums of money after the execution of said receipt; and denies final settlement.

Appellant, on the 13th day of January, 1890, filed his first supplemental answer in reply to appellee's first supplemental petition, in which he excepted generally and specially to all that part of the same pertaining to appellant's conviction for gaming, because the same was irrelevant and unnecessary as a matter of inducement, etc.; and denied all the allegations in said petition; and specially pleaded that he paid appellee in installments for the entire construction of said building before the same was completed, and took his receipts for the same.

The court overruled the demurrers.  The case being submitted to a jury, resulted in a verdict in appellee's favor in the sum of $945.42½ and all costs of suit.

We dispose of this case here upon the question presented in the second assignment of error, wherein it is complained that the court erred in its charge to the jury, wherein they were instructed to "allow the defendant a credit of $75, this sum being the admitted value by plaintiff of the buggy delivered to him by the defendant."  The appellant in his answer pleaded a settlement and payment of all sums demanded by the appellee.  Under this issue evidence was introduced proving a

sale and delivery of a buggy by appellant to appellee. Appellee upon this point testified, that the buggy was received by him as part pay on his demand against appellant, and that he had not allowed credit for its value on the sum claimed in his petition. He further testified, that the buggy was worth $75. The evidence offered by appellant tended to prove that the buggy was worth when delivered to appellee $150. No evidence was offered showing that the parties agreed upon the value of the buggy at the time it was delivered to appellee. The charge of the court assuming that the value of the buggy was $75 was clearly an invasion of the province of the jury. Its value under this conflicting evidence was for their determination, and not that of the court. For this error in the charge we reverse this case.

Appellant contends that this court should have submitted to the jury the issue of settlement of the matters in controversy between the parties. The pleadings raised this issue and there was some evidence tending to support it. No charge was asked by appellant upon this branch of the case, and the failure to present it to the jury is not reversible error unless a requested charge is refused. Shumard v. Johnson, 66 Texas, 73.

Appellant contends that appellee's demand is barred by limitation, and that the court erred in refusing to give a charge requested by appellant submitting this issue to the jury.

It appears from the averments of the petition and from the evidence that the contract for the construction of the building was in writing. The contract contained a clause providing for all extras above the contract price, and for all changes that might be made in the plans and specifications under which the building was to be erected. The contract further provided, that the building was to be completed by November 1, 1884. The building, together with all changes and extras, was completed and delivered to appellant in July, 1884. The contract is silent as to when payment for the building and changes and extras was to be made. We think the statute prescribing the limitation of four years applies in this case. The contract to construct the building, and also providing for extras and changes that may be made, is in writing. The fact that the extent of extras and changes in the plans were subsequently agreed to would create no new right or contract that was not fully provided for in the written contract. The making of such changes and extras is simply putting into operation a contingency that the parties contemplated might occur when they executed the contract, and for which they provided in this written agreement. The extras and changes are simply incidents of the main contract, and no time being fixed by contract for their payment, it must await until payment is due for the building. The contract provides that the building may be completed by November 1, 1884. The building was fully completed in July, 1884, and possession delivered to appellant. We

think the time of the completion of the building would mature the contract, and that limitation would commence to run from that time. The suit being filed in May, 1888, was in time to prevent the bar of the statute.

We conclude the case should be reversed, and so report it.

*Reversed and remanded.*