**HOUSTON ELECTRIC CO. v. POTTER et al.**

No. 9622.

Court of Civil Appeals of Texas. Galveston.

Dec. 17, 1931.

On Rehearing April 26, 1932.

Dissenting Opinion on Rehearing May 2, 1932.

Further Rehearing Denied June 23, 1932.

Vinson, Elkins, Sweeton & Weems and C. M. Hightower, all of Houston, for appellee Earl T. Zylicz.

LANE, J.

In view of the fact that the plaintiffs are not on this appeal contesting the judgment rendered in favor of the defendant Earl Zylicz, we deem the following statement of the nature and result of the suit sufficient for the purpose of disposing of this appeal:

This suit was instituted by the filing of a petition in the 113th district court of Harris county, Tex., wherein it is recited that "plaintiffs, Verna Alice Potter, joined pro forma herein by her husband, W. D. Potter," were bringing suit against Houston Electric Company and Earl T. Zylicz.

It is alleged that "plaintiff, Verna Alice Potter, is now, as she was on and prior to October 31st, 1928, the wife of the plaintiff W. D. Potter."

It is alleged that, while Verna Alice Potter was riding in an automobile belonging to Earl T. Zylicz, being driven by the wife of said Zylicz, as a guest, a bus owned by the Houston Electric Company was negligently driven by its driver against said automobile, in that said driver failed to have the bus under reasonable and proper control under the surrounding circumstances; that said driver failed to keep a reasonable lookout for approaching vehicles at the point of the collision and without giving warning by blowing the horn of the bus, or otherwise, of his approach; that the collision occurred at the intersection of two streets in the city of Houston; and that the driver of the bus approached and attempted to cross such intersection at a high and dangerous rate of speed in the light of the attending circumstances.

"In that the operator and driver of the defendant, Houston Electric Company's bus, failed to yield the right of way to the automobile in which plaintiff, Verna Alice Potter was so riding, said automobile having reached the intersection of said streets and entered therein prior to the time that said defendant's bus reached such intersection and contrary to and in violation of the law with reference to the rule of the road.

"In that the operator and driver of the defendant, Houston Electric Company's bus, after actually seeing and discovering that the car in which plaintiff, Verna Alice Potter was riding had entered the intersection of said streets before the bus had entered the same and while seeing and realizing the perilous position of said automobile and its occupants failed to exercise ordinary care to stop said bus, or so slacken its speed or change its course, so as to have avoided said collision and accident, which he could have done with

W. M. Ryan, G. G. Gannon, and Baker, Botts, Andrews & Wharton, all of Houston, for appellant.

King, Wood & Morrow, of Houston, for appellees Potter.

·the means at hand and in safety to said bus and its occupants."

It was alleged that Verna Alice Potter, by reason of said collision, as a result of the negligence of the driver of the bus, suffered great mental and physical anguish and pain (setting out specifically the nature of her injuries), to her damage in the sum of $25,000.

The allegations above stated were followed by the following allegations:

"In connection with the paragraph next above, describing *plaintiff's* said injuries and her resulting suffering therefrom, plaintiffs further allege that up· to and prior to the date of said accident, plaintiff, Verna Alice Potter, was a young woman in good health and had never suffered from any of the ailments and injuries alleged; that she was accustomed, in the station of life in which she lived, to entertain at her home and to attend parties, teas and social gatherings with her friends and at her church; that as a result of the presence of said scars on her face, which are noticeable to her friends and the people whom she meets, some of whom have made to said plaintiff remarks about same, including expression of the belief, until otherwise explained, that the scars upon her face, resulting from said injuries, were birthmarks, she suffers great humiliation, mortification, distress of mind and mental anguish; that her deformed and disfigured condition is constantly upon her mind when in company, resulting in her great humiliation and embarrassment, all causing her such distress of mind and mental anguish, as a result of which she feels too greatly embarrassed and humiliated to mix with her associates and friends as she did before and to entertain and attend entertainments and parties as she was accustomed to do, and from all of· which she has been greatly damaged as is alleged in the paragraph next above.

"IX. That as a result of said injuries, it became necessary for *plaintiffs* to and they did, secure the attendance of a physician and surgeon to treat said injuries, to make X-Rays thereof, for the purpose of determining the course and progress of same, to employ nurses, to buy medicines and to remain in a hospital for many days, and in bed for many weeks, for all of which plaintiffs have paid and become obligated to pay the reasonable and customary charges for such services, aggregating the sum of Five Hundred ($500.00) Dollars; that in order to relieve her face from said scars or to lessen the effect thereof it will become necessary for plaintiff, Verna Alice Potter, to undergo a serious plastic operation, with assurance that the same will be successful, in the removing· of said scars and disfigurement and to remain in a hospital for many weeks because thereof, for which plaintiffs will be compelled to pay a further charge for such operation, hospital service,

nurse hire in the sum of One Thousand ($1,-000.00) Dollars which is the usual and customary charge for like service, all to plaintiffs' further actual damage in the sum of Fifteen Hundred ($1500.00) Dollars.

⸍"Wherefore, defendants each having answered herein, *plaintiffs* pray that upon a final hearing and trial hereof, they have judgment for the actual damages so sustained and as herein pleaded, together with six per cent. interest thereupon from the date of judgment until paid, and for all costs in this behalf incurred, or to be incurred, and for all such other and further relief, special and general, in law and in equity, to which they may show themselves justly entitled upon said trial, and for all of which they will ever pray." (Italics ours.)

"Defendant Zylicz filed an answer consisting, so far as is pertinent here, of a general denial, a plea of contributory negligence on the part of Mrs. Potter, the plaintiff, and a plea that the negligence of defendant, Houston Electric Company, in various particulars alleged, was the sole proximate cause of the accident. The defendant Zylicz filed no cross-action against Houston Electric Company.

"The answer of defendant Houston Electric Company consisted of a general demurrer, a general denial, a plea of contributory negligence on the part of the plaintiff, Mrs. Potter, a plea that the sole proximate cause of the accident was the negligence of Mrs. Zylicz in various particulars alleged, and a plea that the two ladies were, at the time, engaged in a joint enterprise."

Further pleading in the alternative, the electric company alleged as follows:

"E. T. Zylicz owned the automobile in question which collided with the defendant's bus at the time and place complained of in the petition of plaintiffs in this cause, and he maintained and operated said car as a 'family car' for the use, benefit and enjoyment of his family including his wife, Mrs. E. T. Zylicz; that at the time and occasion complained of in this suit Mrs. E. T. Zylicz was driving the automobile with the permission and under the authorization of her husband, E. T. Zylicz; that in driving the car at the time and place complained of in the petition of plaintiffs herein, Mrs. E. T. Zylicz was negligent in the driving of said automobile and the manner and way in which she drove same before and at the time of said collision and had it not been for her negligence the collision would not have happened; that the negligence of Mrs. E. T. Zylicz in the driving of the automobile of the defendant E. T. Zylicz was a proximate cause of the collision which happened between the said automobile and a bus of this defendant at the time and place complained of· in the petition of plaintiffs herein and the resulting injuries, if any, therefrom to Mrs. Verna Alice Potter, and

the defendant, Houston Electric Company by way of plea over and against the said E. T. Zylicz, respectfully aver and plead *that if the driver of its bus was negligent in any respect complained of in the petition of plaintiffs herein (which is expressly denied) that the negligence, if any, of such driver was merely passive whereas the negligence of Mrs. E. T. Zylicz was active and had it not been for the active negligence of Mrs. E. T. Zylicz at the time and place in question Mrs. Verna Alice Potter would not have received the injuries complained of and the collision would not have happened;* and the Houston Electric Company pleads that if any judgment be recovered by the plaintiffs either or both against this defendant Houston Electric Company that it have judgment for like amount over and against the said E. T. Zylicz; or in the alternative, defendant pleads that under all of the facts and circumstances surrounding the happening of the collision between the automobile of E. T. Zylicz on the occasion in question and the bus of this defendant that the negligence of the driver of the automobile, Mrs. E. T. Zylicz, was a proximate cause of the collision and the injuries, if any, therefrom to Mrs. Verna Alice Potter, plaintiff herein, and if any judgment should be recovered against this defendant Houston Electric Company that the court decree that said defendant Houston Electric Company have judgment for at least fifty per cent. (50%) of said amount over and against the said defendant E. T. Zylicz and that E. T. Zylicz be required to contribute one-half of any judgment that may be rendered in this cause in favor of the plaintiffs herein against this defendant, Houston Electric Company." (Italics ours.)

The cause was submitted to a jury upon the enormous number of 71 special issues in answer to which the jury found: That the driver of appellant's bus failed to have the bus under reasonably safe control, in the light of the attending circumstances, in approaching and attempting to cross the street intersection where the collision occurred; that the operator of the bus on approaching the street intersection failed to maintain a reasonable lookout for vehicles approaching from the left on Commonwealth street; that the operator of the bus failed to give any warning of his intention to cross the street intersection before entering the same; that the operator of the bus at the time of the accident was operating the bus at a dangerously fast rate of speed in the light of the attending circumstances; that the automobile in which Mrs. Potter was riding at the time of the accident had reached the street intersection where the accident occurred before the bus reached such intersection, and the failure of the operator of the bus, under such circumstances, to permit the car in which Mrs. Potter was riding to pass before attempting to cross such intersection, was negligence on the part of such operator of the bus.

The jury found that each of the above findings constituted negligence on the part of said operator, and that each was a proximate cause of the injuries suffered by Mrs. Potter. The jury also found, in answer to such special issues, that the operator of the bus saw the car in which Mrs. Potter was riding, and its occupants, as they were attempting to cross said intersection, and realized their perilous position in time to have stopped the bus, or to so slacken its speed by the means at hand, with safety to the bus and its occupants, and thereby have avoided the collision which resulted in Mrs. Potter's injuries, and that such failure of the operator of the bus to stop said bus or to slacken its speed was a proximate cause of such collision and injuries; that the operator of the bus saw the car in which Mrs. Potter was riding and the occupants of the same as they were attempting to cross the street intersection, and realized their perilous position in time, in the exercise of ordinary care, to have, by the means at hand and in safety to the bus and its occupants, changed the course of the bus in such manner as the same would have passed by the Potter car and thereby have avoided said collision and injuries; that the failure of the operator of the bus to so change its course and drive the same behind the Potter car was a proximate cause of said collision and injuries; that the failure of Mrs. Zylicz to sound her horn before crossing the street intersection was not negligence; that the failure of Mrs. Zylicz on seeing and discovering the approaching bus to permit it to pass or to cross the street intersection was not negligence; that it was not negligence, under all the circumstances, for the plaintiff Mrs. Potter to permit Mrs. Zylicz, without protest, to run the automobile in which they were riding into the intersection of said streets without bringing the same to a stop; that it was not negligence on the occasion in question for Mrs. Potter to permit the defendant Mrs. Zylicz to drive the automobile in which they were riding into said intersection without giving any warning signal of the approach of the said car into said intersection without protest on the part of Mrs. Potter; that Mrs. Potter was not guilty of negligence on the occasion in question in the matter of keeping a reasonable lookout for traffic approaching said intersection as the car in which she was riding approached and went into said intersection; that the car in which Mrs. Potter was riding was not driven into the intersection at a rate of speed that constituted negligence under the attending circumstances; that the automobile in which Mrs. Potter was riding was not driven up to and into the intersection without the same being under reasonable control of the driver thereof; that Mrs. Potter was not guilty of negligence in permitting Mrs. Zylicz, without

any protest, to drive her automobile into the intersection without having the same under such control that it could be stopped in sufficient time to avoid an accident with traffic approaching such intersection from the west; that Mrs. Zylicz did not fail to use ordinary care to keep a reasonable lookout for the approach of the bus as it came from the west and proceeded east; that Mrs. Zylicz was not operating her car as the same approached and went into the intersection of said streets on the occasion in question, under the attending circumstances, at such rate of speed as to constitute negligence; that Mrs. Zylicz did not fail to use ordinary care to have the automobile in which she was riding under reasonable control as it approached and entered into said street intersection on the occasion in question; that Mrs. Zylicz did not drive her automobile into said street intersection without having the same under such control that it could be stopped in time to prevent a collision with traffic approaching from the west; that Mrs. Zylicz on the occasion in question did not discover the approach of defendant's bus and the imminence of a collision in time, by the exercise of ordinary care in the use of the means at her command and with safety to herself and the passenger in her car, to avoid the collision by stopping her automobile or slackening the speed thereof; that the driver of the bus as he approached said street intersection was operating and running the bus in excess of twenty miles an hour; that such act in running such bus at such speed was negligence and a proximate cause of said collision and injuries; that the operator of the bus at the time in question could have driven the bus to the left and rear of the car in which Mrs. Potter was riding and have avoided the collision; that the failure to have so driven said bus was negligence and a proximate cause of said collision and injuries; that the operator of the bus failed to decrease the speed of the bus as he approached the intersection of said streets, and that such failure was negligence and a proximate cause of said collision and injuries; that the operator of the bus failed to apply his brakes as he approached and before he entered the intersection of said streets, and that such failure was negligence and a proximate cause of said collision and injuries; that Mrs. Zylicz did enter upon the intersection of said streets before the bus had reached said intersection, and that the failure of the operator of the bus to yield the right of way to Mrs. Zylicz's automobile was negligence and a proximate cause of said collision and injuries; that the sum of $5,000, if paid now, would be a fair and adequate compensation for the injuries alleged and proven to have been received by Mrs. Potter on the occasion in question.

Upon the answers of the jury to such questions, the court rendered judgment for the plaintiffs, Mrs. Potter and husband, W. D.

Potter, against the defendant Houston Electric Company for the sum of $5,000, together with interest and costs of suit; that the plaintiffs take nothing by their suit as against the defendant Earl T. Zylicz; and, further, that the defendant Houston Electric Company take nothing by its cross-action over and against the defendant Earl T. Zylicz, but that the defendant Earl T. Zylicz have and recover from the defendant Houston Electric Company all costs by him expended.

From such judgment the Houston Electric Company has appealed.

As shown by our preliminary statement, it is recited in the plaintiffs' petition that Mrs. Potter was bringing the suit, joined pro forma by her husband, W. D. Potter. It is also shown that such recital is followed by recitals substantially that, by reason of the injuries to Mrs. Potter resulting from the alleged negligence of the defendant, it became necessary for *plaintiffs* to employ a physician and a nurse and to incur hospital expenses, all of which cost them the sum of $500, and that, by reason of such injuries, it has become necessary for Mrs. Potter to undergo a serious plastic operation for which *plaintiffs* will be compelled to pay a further sum of $1,000. Such recitals are followed by a prayer by both plaintiffs for recovery of all damages alleged.

Upon the pleadings and evidence and the findings of the jury, which are unchallenged in this court, except the findings of amount of damages, judgment was rendered decreeing "that the '*plaintiffs*' (not the *plaintiff* as asserted by appellant in its brief) Verna Alice Potter and her husband W. D. Potter do have and recover of and from the defendant Houston Electric Company," etc.

Appellant's first contention for a reversal of the judgment is that it is shown by the allegations of the petition that the suit was purely one for recovery for personal injuries to Mrs. Potter; that such action is a suit to recover community property which the husband alone could maintain, and, since the suit was prosecuted by Mrs. Potter, a married woman, joined only pro forma by her husband, and she having no right in law to prosecute such cause of action, the petition failed to state a cause of action.

We overrule appellant's contention. Such contention was, for the first time, raised in this court, and the rendition of the judgment is now assigned as fundamental error apparent of record. As hereinbefore shown, the answer of appellant, in so far as it relates to the cause of action asserted by the plaintiffs, Potter, consists of a general demurrer, a general denial, and a plea of contributory negligence on the part of Mrs. Potter. There is nothing in the entire record to show that the general demurrer was ever called to the attention of the court or that any order was entered relative thereto. There were no ex-

ceptions made to plaintiffs' petition, nor was there any plea of misjoinder of parties.

In *Southern Casualty Co. v. Morgan*, 16 S.W.(2d) 533, it is said by the Commission of Appeals that: "General demurrer was pleaded, but it was not presented and given disposition. Hence, it was waived. Indiana & Ohio Live Stock Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755."

 We are not called upon here to follow this holding, for we are of opinion that the petition in the present case is good as against a general demurrer. The facts were fully pleaded, the husband was a party plaintiff, and actively participated in prosecuting the suit to judgment. The recovery by husband and wife was for, and bound, the community. The words "pro forma" as used in the petition, and an apparent allegation of a right of a recovery by the wife, in absence of exceptions and after verdict and judgment, are mere surplusage. Since W. D. Potter, the husband, joined his wife in filing the suit for damages for personal injuries to the wife, and obtained from the court a judgment in favor of the husband and wife, a sum of money for such injuries, the husband is estopped by such judgment from maintaining another suit on such cause of action. The contention of appellant, therefore, that the judgment of the trial court does not estop the husband from bringing suit for the same damages that have been recovered by the community in the case is untenable. In Teague v. Fairchild (Tex. Com. App.) 15 S.W.(2d) 585, at page 586, it is shown that a judgment for personal injuries to the wife was rendered in favor of the wife. By referring to the opinion of the Court of Civil Appeals in this case (Fairchild v. Davis, 295 S. W. at page 643, col. 2), there is an indication that the suit was brought in the name of the wife with the consent of the husband, presumably of record. Notwithstanding the reasoning of the Court of Civil Appeals in that case, and notwithstanding Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, duly considered by the Court of Civil Appeals and by the commission, the commission held the recovery by the wife, and the husband's action, tantamount to a gift to the wife [15 S.W.(2d) page 589]; citing Southern Pacific Co. v. Ulmer (Tex. Com. App.) 286 S. W. 193, the reasoning of which had been rejected by the Court of Civil Appeals. Southern Pacific Co. v. Ulmer (Tex. Com. App.) 286 S. W. page 194, said:

"When the court awarded all of such recovery to the wife, it necessarily meant that nothing was thought to be due the husband by the court. After giving it all to the wife, there was no necessity to say that nothing was awarded the husband. There was nothing left for him to recover. For that reason, we think this judgment as effectively disposed of the husband as if it had gone on and

provided that the husband take nothing by reason of his joinder in the suit."

The court in its charge defined proximate cause as follows: " 'Proximate cause,' as that term is used in these instructions, means a cause which immediately precedes and directly produces the injuries, if any, complained of, and without which the injuries would not have happened, and which injuries might reasonably have been anticipated as the natural and probable consequence of such cause."

Appellant, in this court, for the first time insists that the court erred in not defining the meaning of the term "might reasonably have been anticipated."

So far as shown by the record, no timely objection was made to any part of the charge. The charge correctly defines proximate cause. The court was in no manner requested to define the term "might reasonably have been anticipated," nor does the motion for new trial, filed by appellant, assert that the court erred in failing to define such term. Under such circumstances, appellant cannot be heard in this court to assert that the trial court erred in not defining such term.

 However, had timely objection been made to the charge and a definition of said term been requested, we would refuse to sustain appellant's complaint. The term "might reasonably have been anticipated" is not such a technical or legal term as is required to be defined by the court. Employers' Casualty Co. v. Scheffler (Tex. Civ. App.) 20 S.W.(2d) 833, 834, col. 2; Bishop v. Millers' Indemnity Underwriters (Tex. Civ. App.) 254 S. W. 411, 413, col. 1; Bankers Lloyds v. Pollard (Tex. Civ. App.) 40 S.W.(2d) 859, 461, col. 2. We think any juror of ordinary intelligence would readily understand the meaning of such term. We agree with appellee that it is not necessary that a term such as is here considered be defined with all the minuteness of a philosophical certainty, but it is sufficient if the definition is correct and its meaning clear enough to be understood by the ordinary juror. In fact, the fine niceties which the courts have recently tended to observe in the definition of terms are more apt to confuse a lay jury than to assist them.

By appellant's third proposition it contends that the court erred in allowing plaintiff to introduce in evidence, as an admission against interest, pleading of appellant setting up a cross-action against the defendant Zylicz wherein it is alleged that the negligence of Mrs. Zylicz was the sole proximate cause of the collision which resulted in the injuries to Mrs. Potter; that, if the driver of its bus was negligent in any respect complained of in the petition of plaintiffs herein (which is expressly denied), the negligence, if any, of such driver was merely passive, whereas the negligence of Mrs. E. T. Zylicz

was active, and, had it not been for the active negligence of Mrs. E. T. Zylicz at the time and place in question, Mrs. Verna Alice Potter would not have received the injuries complained of, and the collision would not have happened.

Appellant reserved a bill of exceptions to the introduction of such pleading. The pertinent objection made to such introduction was, first, "that it is never proper to introduce in evidence the pleadings upon which a party goes to trial, because they are before the jury for all purposes," and, second, that the only purpose for such introduction was to get such pleading before the jury as showing an admission of negligence on the part of appellant which was a proximate cause of the collision and injuries of Mrs. Potter.

█ The court qualified the bill, in which qualification he said, substantially, that under the law the jury was entitled to have the pleadings read in full in order that it might understand the issues as made thereby; that, up to the time such pleading was offered in evidence, appellant had not read them to the jury; but that, when the court overruled its objection, counsel for appellant read to the jury its pleas in full, whereupon the court held that the objection made by appellant was waived. Appellant accepted and filed the bill as qualified, and is in no position to dispute the truth of the qualification of the court.

█ Another reason we think appellant's complaint should be overruled is that, if it be conceded that the court erred in admitting such pleading in evidence over the objection of appellant, such error was harmless, as no juror of ordinary intelligence could construe such pleading as an admission on the part of appellant that it was guilty of negligence in any particular whatever, for it is specially, thereby, denied that it was negligent in any respect. We have copied that part of the plea which was introduced to show an admission of negligence on the part of appellant, and it is unnecessary to repeat it here.

As already shown, plaintiffs were allowed to introduce a part of appellant's pleadings. After such introduction, G. G. Gannon of counsel for appellant took the stand as a witness, and testified substantially that neither said pleading nor any part of it was intended as an admission against interest or of liability on the part of appellant.

█ Mr. George King made the closing argument for the plaintiffs, and in such argument said:

"But the funny thing that has developed, to me, in this case, the new angle, is the lawyer witness. When I was in school my old law professor always told me to avoid being a witness in the case. I imagine you would

much rather have heard from the man who was responsible for the operation of that bus than from the lawyer. At any rate, it called to my mind this joke. * * *

"Now the Houston Electric Company in this case has both a good lawyer and a good witness. Now, gentlemen, that is just a little fun. When my young friend has been in court for a good many years longer, he won't do those things. I don't know why it was necessary, unless he wanted to kind of get the opportunity to introduce himself and to make a speech to you in the opening about this pleading of his that I had introduced in evidence and which I had introduced only because he had not read, and which I introduced because I really wanted you to see a picture of this lawsuit from its beginning, because surely there is one thing that is certain—that one or the other or both of the drivers of this car and this bus is responsible for the collision. You can't get away from that."

Appellant assigns such argument as error. We overrule the assignment. Counsel for appellant excepted to such argument, filed his bill of exception, which was qualified by the court as follows:

"The court does not allow or certify the facts as recited in the Bill, to the effect that the argument had no basis appearing in the record, or that the same was not legitimately invited or provoked or was not in response to any argument made by counsel for defendant, Houston Electric Company, but on the contrary, states that the court was and is of the opinion that there was basis in the evidence and proceedings justifying the argument which is now reflected in the Statement of Fact. Likewise, both counsel for defendant, Houston Electric Company, in their argument to the jury upon the failure of defendant to produce the witness Ellis, its bus driver, at length discussed such failure stating, among other things, that the motorman Ellis, had gone to the bedside of his sick brother and could not be present at the trial, and that defendant, Houston Electric Company, had done all in their power to get his testimony, but that he had gone to the bedside of his brother to be present at his last illness and to be with him and see him off into eternity, and that he was a working man just like you gentlemen of the jury, and that he was working hard to support his wife and children, and had further argued to the jury the effect of defendant's pleading and of the witness Gannon's testimony in relation thereto, and the court was of the opinion that the argument complained of was in response to such argument of the counsel for the defendant, Houston Electric Company.

"It was further shown by the evidence that defendant's bus driver, the witness Ellis, was an employee of the defendant, Houston Elec-

tric Company; that he was present when the trial began; that he was in Beaumont according to the witness, Aiken, only two and one-half hours by rail or automobile from the court; that no request was made to put the witness on the stand out of order, which would have been allowed; that the evidence closed on July 3rd and the case was not submitted to the jury until July 8th, and there was no request by defendant, Houston Electric Company, to withdraw its announcement and no request by it for a postponement of the trial until the witness could be available, which latter request would have been granted if it had been made; after the evidence was closed and before the same was submitted to the jury five days later, there was no further effort by counsel for defendant, Houston Electric Company, to account for its inability to produce the witness during such five days, or to show whether he was yet absent from the city or not.

"The argument of counsel complained of in the bill was made in the nature of a friendly criticism of defendant's, Houston Electric Company, attorney becoming a witness, upon what the court considers a collateral issue.

"The court was further of the opinion that the verdict of the jury was not excessive and that the jury was not influenced in arriving at its verdict by the argument complained of."

Appellant accepted and filed the bill as qualified, and is bound by such qualification, and is in no position to dispute its truth. No exception was taken to such qualification. By subdivision 3, article 2237, it is provided that the qualifying of instruction to a jury shall be regarded as approved unless excepted to.

As qualified, the bill of exception presents no reversible error. Indeed, counsel for appellant so admits, for in his brief he says: "Appellant's assignments of error under this proposition are brought forward, not with the idea of attempting to convince this Honorable Court that these assignments alone present reversible error, but simply to show the embarrassing position into which defendant, Houston Electric Company, was forced by the error complained of under appellant's Third Proposition, supra."

One Ellis was the driver of the bus which was in collision with the Zylicz automobile. It was shown that he was in Houston where and when this cause was first proceeding to trial; that he was at such time an employee of appellant and under the control of one J. W. Aiken, his boss; that in a day or so after the cause went to trial he left Houston and went to Beaumont, a distance of about 85 miles from Houston; that it was known by his superior that the cause was on trial. It was shown that no effort was made by appellant to take the deposition of Ellis, though the cause was not submitted to the jury for

more than five days from the time he left for Beaumont; that no request was made to the court for a postponement of the trial so that the testimony of Ellis might be procured; and that no request was made to put the absent witness on the stand out of order. In other words, it was shown that, if appellant had exercised due diligence, the testimony of the absent witness could have been procured. No one testified that the witness had not reported to his superior for several days before the cause was submitted to the jury.

J. W. Aiken, an employee of appellant and the superior and boss of Ellis, testified in effect that Ellis showed him (Aiken) a telegram from his brother in Beaumont advising him that his brother was very sick; that Ellis told him that he had to go to Beaumont; that he (Aiken) asked Ellis how soon he would be back, and Ellis replied: "As quick as his brother got in a position for him to come back"; that he told Ellis not to stay any longer than he had to as he needed him every day. He testified that Ellis was not in Houston at the time he was testifying (which was shown to have been more than five days before the cause was submitted to the jury).

■■ Sam Holliday, of counsel for plaintiffs, in making the opening argument, in effect said that "Ellis, the bus driver, did not tell you anything about what he did just before and at the time of the collision; that appellant has brought the superintendent (Aiken) to tell you that Ellis had to go out of Houston after the case started to see his sick brother, that you gentlemen (referring to the jury) saw during this trial once or twice where witnesses were allowed to be put on out of order on account of emergency. What excuse in God's world could Ellis give for running into that car if he was here? I think that is the best explanation of why he was not here—because if he came he would not have anything to say. You didn't see them ask us to put him on out of order. Another man goes on the stand and tells you about his brother being sick. If I am not mistaken he got that word after this trial started. Now this trial has been going on for plenty of time.

"You have to judge people by the way we know people act, and you can take into consideration, from the knowledge that you have of people and human beings, what they will do under certain circumstances, and, as I said before, if that man could have thrown any light to help out from the standpoint of the Houston Electric Company, I think he would have been here and given it to you, and he wasn't here because he didn't have it. That is my idea about it, and it is up to you to decide whether or not that is true."

Counsel for appellant filed his bill of exception complaining of the argument of Counsel Holliday, and assigns the same as error.

The court approved the bill with the following qualification:

"There was no motion, verbal or otherwise, made by the defendant, Houston Electric Company, upon the closing of the argument, requesting the court to instruct the jury not to consider the argument complained of; and the court does not approve or certify the facts as recited in the Bill, to the effect that there was no basis in the record except that arising from the testimony of the Witness, Aiken, and that for the argument and as well that the argument complained of was not in reply to argument of counsel for defendant, Houston Electric Company, or was not in anyway invited by it, but upon the contrary, states that the court was and is of the opinion that there was basis in the evidence and proceedings justifying the argument as is reflected now in the Statement of Facts. Likewise, both counsel for defendant, Houston Electric Company, in their argument to the jury upon the failure of defendant to produce the witness, Ellis, its bus driver, at length discussed such failure stating, among other things, that the motorman, Ellis, had gone to the bedside of his sick brother and could not be present at the trial, and that defendant, Houston Electric Company, had done all in their power to get his testimony, but that he had gone to the bedside of his brother to be present at his last illness and to be with him and see him off into eternity, and that he was a working man just like you gentlemen of the jury, and that he was working hard to support his wife and children, and that by such argument defendant had waived objections to argument made by counsel for plaintiff as recited in the Bill.

"It was further shown by the evidence that defendant's bus-driver, the witness Ellis, was an employee of the defendant, Houston Electric Company; that he was present when the trial began; that he was in Beaumont according to the witness, Aiken, only two and one-half hours by rail or automobile from the court; that no request was made to put the witness on the stand out of order, which would have been allowed; that the evidence closed on July 3rd and the case was not submitted to the jury until July 8th, and there was no request by defendant, Houston Electric Company, to withdraw its announcement and no request by it for a postponement of the trial until the witness could be available, which latter request would have been granted if it had been made; after the evidence was closed and before the same was submitted to the jury five days later, there was no further effort by counsel for defendant, Houston Electric Company, to account for its inability to produce the witness during such five days, or to show whether he was yet absent from the city or not.

"The court was further of the opinion that the verdict of the jury was not excessive and that the jury was not influenced in arriving at its verdict by the argument complained of."

Appellant accepted and filed the bill as qualified, and is bound by the recitals in such qualification. No exception was taken to such qualification.

The bill as qualified discloses no error on the part of the trial court in not granting appellant a new trial upon its motion therefor, upon the grounds shown by the bill of exception.

It is well settled that counsel has the right to comment on the absence of witnesses, when it is within the power of the defaulting party to produce them, and when such witnesses are possessed of a knowledge of the transaction inquired about. Such comment is especially permissible where such party has such witness under their control as an employee and depends upon his appearance at the trial without process. M. P. R. R. Co. v. White, 80 Tex. 207, 15 S. W. 808; H. E. & W. T. R. R. Co. v. Boone, 105 Tex. 188, 146 S. W. 533; H. B. & T. R. R. Co. v. Davis (Tex. Civ. App.) 19 S.W.(2d) 77, writ of error denied. The assignment is overruled.

The assignment complaining of argument made by Mr. King of counsel for plaintiffs relative to the failure of appellant to produce the testimony of the driver of the bus, is overruled.

The bill of exception showing the error sought to be presented was qualified by the court in substantially the same words as were used in the qualification of the bill complaining of the argument of Mr. Holliday. It was accepted and filed by appellant as stating the true fact, and therefore it cannot be attacked by appellant. As qualified, the bill shows no error.

While Mr. Holliday of counsel for plaintiffs was presenting his argument, objection was urged by counsel for appellant to certain remarks made, and, upon such objection being made, Mr. Holliday said: "I am surprised they don't object to that."

Appellant insists that such remark was a reflection upon the action of counsel for appellant in making the objection, and insists that such remark constitutes reversible error. In support of such contention, counsel for appellant cites the case Ivy v. Ivy, 51 Tex. Civ. App. 397, 112 S. W. 110, 113, opinion by the late Judge Reese of this court, and quotes from such opinion the following: "It was improper for counsel for plaintiff to refer, in a disparaging way, to the fact that defendant had made use of his unquestioned right to object to certain testimony. It should not have been allowed by the trial court."

He fails, however, to quote the concluding words of Judge Reese as follows: "It should not have been allowed by the trial court. We

cannot say, however, that this affords ground for reversal of this case."

In our opinion, it would be lamentable if judgments of the trial courts are to be reversed on such indiscreet, but harmless, remarks, such as are here complained of. The trial jury should be presumed to have ordinary sense, and, if such presumption is indulged, it must be held that such remarks would not in any manner influence them in arriving at their verdict. Appellant's contention is overruled.

Referring to Messrs. Gannon and Ryan of counsel for appellant, Mr. Hightower of counsel for defendant Zylicz in his argument said, in effect, that they, Gannon and Ryan, assumed in their argument that the bus driver assumed that, as he was operating the bus on a 32-minute schedule, he further assumed that everybody should get out of his way as he was going to make the schedule. Continuing, counsel said that the bus driver had in his mind that parties in private vehicles were nothing more than one of the public; that he was running on the 32-minute schedule, pedestrians, ladies and children in automobiles should get out of the way; stop; turn to the right; do something—or they would be knocked sky-west and crooked. The objection and exception to such argument is preserved by appellant's bill No. 3.

Mr. Hightower said further, in his argument as follows: "Now, Mr. Gannon and Mr. Ryan, in their argument on that issue, assumed the same things that the bus driver was assuming. That is, whenever a person driving an automobile, a private citizen who pays his automobile tax, who is just as much entitled to the right to the highways as the busses of the Houston Electric Company, no matter where you are, under what circumstances, whenever you see one of us coming on that 32-minute schedule, you had better stop, turn to the right, or do something! If you don't, you will get knocked across the street!"

Appellant's objection and exception to such argument is preserved by its bill No. 4.

Mr. King made the closing argument for the plaintiffs, and in such argument he said:

"And that reached the burden of these gentlemen's argument to you, and that is the assumption that they indulged in—and they believed it, all of them, lawyers, claim agents, witnesses and all—that their busses have got a right to come tearing along on my street and your street regardless of any other traffic on it.

"That is the assumption that they proceed upon; that is what they argue with you here, that that bus had the right of way down Welch. Turn it loose! Let anybody that crosses these intersections do so at their own peril, although they are our own streets, and

we paid for them and built them and we are entitled to use them! And yet—'We—we, the Houston Electric Company, have the right of way, and we are going to use it!' That is the burden of their argument, and they have one there about Mrs. Potter keeping lookout, which I am going to discuss with you presently."

Appellant preserved its objection and exception to such argument by its bill No. 6.

As appellant has, in discussing the arguments mentioned, grouped them under one head, we shall dispose of them as one group.

The court qualified each of appellant's bills, in effect saying that he does not allow or certify the fact as in the bill recited. He says that there was basis in the evidence and proceedings justifying the argument; that both counsel for appellant who preceded counsel making the arguments complained of in their argument stated and argued that the bus had the right of way on Welch avenue as against those traveling on Commonwealth street; that they argued that, because of such fact, it devolved on plaintiffs to exercise greater care as they approached and undertook to cross Welch avenue than was required of the bus driver; that the arguments were in response to the arguments made on the matter by counsel for appellant.

Appellant accepted and filed such bills as qualified. It is in no position to dispute the facts stated in such qualifications.

In support of the last and our several statements to the effect that, when one accepts a bill of exceptions with a qualification by the court, he is bound and committed thereby, and that the statement of the court as to the qualification must be accepted as true, we quote from decisions of this state as follows:

"Statements of the trial judge, contained in his qualifications to a bill of exceptions, must be taken as true by the court on appeal." Payne & Joubert Machine & Foundry Co. v. Dilley (Tex. Civ. App.) 140 S. W. 496.

"A bill of exceptions, qualified by the trial judge, must be considered in the light of the qualification, in the absence of any exception to the action of the trial court." Gaines v. State, 67 Tex. Cr. R. 604, 150 S. W. 199.

"Where appellant accepts a bill of exceptions as qualified by the trial judge, he is bound thereby." Hiles v. State, 73 Tex. Cr. R. 17, 163 S. W. 717; Creech v. State, 70 Tex. Cr. R. 229, 158 S. W. 277; Boyd v. State, 72 Tex. Cr. R. 521, 163 S. W. 67.

"The Court of Civil Appeals is bound by the trial court's statement of the circumstances set forth as a qualification to the bill of exceptions." Yellow Pine Paper Mill Co. v. Lyons (Tex. Civ. App.) 159 S. W. 909.

"Qualifying statements, appended to bills of exceptions by the court when approving the same, are controlling as to the facts stat-

ed therein." Texas, G. & N. Ry. Co. v. Berlin (Tex. Civ. App.) 165 S. W. 62.

"Where appellant 'accepted bill of exceptions as qualified by court, he is bound by the court's statement therein, which will be presumed to be true." Quanah, A. & P. Ry. Co. v. Lancaster (Tex. Civ. App.) 207 S. W. 606; Duenkel v. Amarillo Bank & Trust Co. (Tex. Civ. App.) 222 S. W. 670; Rhoades v. El Paso & S. W. Ry. Co. (Tex. Civ. App.) 230 S. W. 481.

"Where the qualification of a bill of exceptions by the trial judge contradicts a statement of appellant's counsel in the body of the bill, the facts stated in the qualification will control." Conner v. McAfee (Tex. Civ. App.) 214 S. W. 646; Guyler v. Guyler (Tex. Civ. App.) 220 S. W. 604.

"It has been held, if the bill which has been corrected by the judge is accepted and filed by the defendant's attorney, the latter is estopped from claiming it is unfair." Moore v. State, 47 Tex. Cr. R. 410, 83 S. W. 1117, 1118.

"Where one accepts a bill of exceptions with a qualification by the court, he is bound and committed thereby, and the statements of the court as to the qualification must be accepted as true." San Antonio Traction Co. v. Settle, 104 Tex. 142, 135 S. W. 116.

"An appellant who accepts a bill of exceptions, qualified by the court, is concluded by the qualification." Cyphers v. State, 67 Tex. Cr. R. 504, 150 S. W. 187.

 That the operator of the bus saw the automobile and the peril of its occupants, before it collided with the automobile, in time to have avoided such collision by the use of means at his command, is supported by evidence.

 While it is true, as contended by appellant, that, when two vehicles, one on Welch, a paved street, extending east and west, and another on Commonwealth street, extending north and south, reach the intersection of the two streets at the same time for the purpose of crossing such intersection, the one on Welch has the right of way, there is a rule of law to the effect that, though the performance of an act be entirely legal in itself, it may nevertheless be made unlawful by the manner in which it is performed. If it was shown, as we think it was, that in the exercise of his right of way the bus operator in the present suit performed such right in such harsh, negligent, and unlawful manner as to come in collision with and injure the occupants of the automobile entering such intersection from Commonwealth street, the owner of the bus would be liable for damages suffered by such injured person as was caused by such collision, in the absence of proof of negligence on the part of such injured party,

which contributed to the accident causing the injury.

 If the two vehicles in question reached said intersection at the same time, the bus doubtless had the right to proceed ahead of the automobile, but, if so, it was required to do so with reasonable care and prudence; such right must be reasonably exercised so as to prevent unnecessary damage or injury to property or person. Such being the rule, counsel for plaintiffs were justified in making the remarks complained of, made in answer to argument of appellant's counsel insisting upon the absolute right of the bus to proceed ahead of the automobile.

Counsel for appellant who preceded Mr. King in the argument told the jury that the plaintiff Mrs. Potter was only slightly injured, that she appeared hearty and well, and that the scars complained of did not amount to anything.

Mr. King of counsel for plaintiffs, in the closing argument for plaintiffs, said: "And yet these gentlemen say: Oh! that doesn't amount to anything to a lady—doesn't amount to anything at all. No, that doesn't amount to anything—take it home to your or my wife."

Appellant did not make any objection to such language at the time that it was used, but did so the first time on its motion for a new trial, and, the motion then being overruled, it reserved its bill of exception to such language, and in this court insists that the same is cause for a reversal of the judgment.

The court refused to approve the bill as presented by counsel, and qualified the same before signing it as follows:

"Likewise, counsel for defendant, Houston Electric Company, in their argument made before the argument complained of, argued to the jury that the plaintiff was only slightly injured; that she appeared hearty and well and that the scar complained of did not amount to anything, and the court was of the opinion that the argument complained of was in response to the argument so made by the counsel for defendant, Houston Electric Company.

"The court was further of the opinion that the verdict of the jury was not excessive and that the jury was not influenced in arriving at its verdict by the argument complained of."

Appellant accepted and filed such bill as qualified, and it is in no position to dispute the truth of the qualification. See authorities cited under our discussion of the next preceding proposition.

Another good reason for overruling the contention here made, as well as the complaints of several arguments hereinbefore discussed,

is that such arguments were not complained of at the time they were made nor at any time before the presentation of appellant's motion for a new trial.

In volume 3, Texas Jurisprudence, p. 22, § 147, it is said:

"When any action of the court is deemed to be prejudicial and without the province of the court in conducting the cause, objection should be made at the time in order that the error if any may be rectified, otherwise the question may not ordinarily be raised on appeal.

"A party who would have his rights protected by an appellate court should object at the trial to improper argument of counsel in presenting a case to the jury, by requesting that the argument be withdrawn and the jury be instructed not to consider it and by reserving exceptions to the ruling of the court, or in some cases, by merely objecting and preserving exceptions."

See, Norwich Union Ind. Co. v. Smith (Tex.. Com. App.) 12 S.W.(2d) 558, Emberlin v. Wichita Falls, R. & Ft. Worth R. R. Co. (Tex. Com. App.) 284 S. W. 539.

In the case last cited the Commission of Appeals, in speaking of complaints of arguments made, in the trial of the case, for the first time in a motion for new trial, said: "The question as to whether such argument was calculated to prejudice is left to the reasonable discretion of the trial court in passing upon the motion, and when, in the exercise of such discretion, the trial court has determined this question, an appellate court is not warranted in setting aside its holding. It is only when from the record on appeal, it is clear that argument in violation of this rule was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule a contrary holding by the trial court on this question. Unless it clearly appears that the trial court has abused its discretion, its holding must stand."

For the reason's stated, the complaint of appellant is overruled.

We overrule appellant's complaint of Mr. King's argument in which he said: "They (meaning the appellant) have a smart claim department, there is no question about that—the smartest in town, the closest in town under Bert Gray, with some of the best men that they can possibly employ to run these things down."

The court refused to approve appellant's bill complaining of such remarks without qualifying same. He qualified the bill by saying: "A number of witnesses testified that shortly following the accident they were interviewed by either Mr. Ruland or Mr. Stormer of the Claim Department of the Houston Electric Company, and gave to them written statements about the accident and it was shown that they were upon the ground at the scene of the accident making an investigation shortly after the accident occurred. The two Claim Agents mentioned, as well as Mr. Bert Gray were present in court during most of the trial."

Appellant accepted and filed the bill as qualified, and is bound thereby.

We overrule appellant's complaint of the refusal of the court to allow its counsel to open and close the argument as to defendant Zylicz, without a detailed discussion of the same. We do not think from the facts shown that the court abused his discretion in making such ruling.

After J. W. Aiken, one of appellant's superintendents and the boss of J. V. Ellis, had testified in effect that Ellis came to him and told him that his brother was sick in Beaumont, and showed him a telegram, and that he also told him that he had to go to see his brother, the witness was asked by counsel if Ellis had shown him the telegram, to which question witness answered, "Yes sir." Counsel then produced an instrument and requested the witness to examine the same, and then asked witness whether such instrument was the telegram that Ellis showed him. To such question he answered, "Yes sir." The instrument purported to be a telegram from Beaumont, addressed to J. V. Ellis, at Houston, which read: "Alfred very low come at once. [Signed] Maggie."

Counsel then offered such instrument in evidence, and its admission in evidence was refused upon objection being made thereto by counsel for the plaintiffs.

Appellant assigns such refusal as reversible error. We overrule such assignment. Appellant asserts that it was not trying to show by the instrument that its contents were true, but to show the fact that it had been received and that the witness Aiken had been so informed. The purported telegram itself, if admitted in evidence, would not show as a fact that it was received by Ellis from Beaumont; no witness was produced to show that it was so received. Nor would such instrument itself prove that witness Aiken had been so informed; indeed, it would not tend to prove any fact not shown by the undisputed testimony of witness Aiken. Appellant could not prove that the purported telegram was genuine by the testimony of Aiken that Ellis told him it was genuine and then be permitted to offer the same in evidence. Such purported telegram could not be shown to be genuine except by testimony of the forwarding telegraph operator, the receiving operator, or of some one who knew it to be genuine. The testimony of Aiken that Ellis told him that the instrument was received by him from the telegraph company is only hearsay evidence and inadmissible to prove the genuine-

ness of the same. We conclude that the court did not err in refusing to permit the instrument in evidence; its genuineness not being shown by any competent evidence.

■ Mrs. Sims, a witness for defendant Zylicz, who was on the bus in question, testified that, after the collision occurred, the bus driver said: "Here's where I lose my job"; she was then asked by counsel for Zylicz the following question: "What was his appearance, Mrs. Sims?" Counsel for appellant objected to admission of the answer; the objection being that the question calls for a conclusion and opinion of the witness. The objection was overruled, and the witness answered: "Not overly serious."

The witness was then asked: "What do you mean by overly serious?" Whereupon counsel for appellant objected to such question upon the grounds that the question called for and the answer would constitute an opinion and mere conclusion of the witness. The objection was overruled, and the witness answered: "Well I mean that I didn't feel that he was very much concerned, that is, overly worried, over the accident; of course, I couldn't read his mind."

Appellant filed its bill of exceptions to the admission of such questions and answers thereto, and in this court assigns the admission of such testimony as reversible error.

We overrule the assignment.

In Jones on Evidence, p. 2304, § 1251, it is said: "The same considerations which have induced the courts to permit shorthand testimony as to the appearance and condition of an animal or thing have similarly induced them in many instances to admit non-expert opinion as to the appearance or condition of a human being. For example, nothing can be more difficult of presentation than a description of the outward manifestations of an emotion. Even artists find difficulty in portrayal but it is well known that the average person procures a very decided opinion and one usually reliable, as to the stronger emotions as manifested by others but without consciously attributing such opinion to any particular manifestation. As to such matters he thinks in terms of 'opinion.' Even if the observer could trace his opinion to its source, by what words could he describe that certain quirk of the eyebrows, or intonation of voice, or the degree and combinations of such indications?"

■ By its eighteenth and nineteenth propositions appellant insists that the verdict and findings of damages is excessive. We overrule such contention. The undisputed evidence shows that plaintiffs had expended $500 for medical bills, etc., by reason of the injuries suffered by Mrs. Potter, and that they would necessarily be required to incur an additional expense of $1,000 by reason of

such injuries. It is therefore apparent that the jury found that plaintiffs were entitled to a recovery of $3,500 for the physical pain and mental anguish suffered by Mrs. Potter, and we think there was sufficient evidence to support such finding. In suits for damages for physical pain and mental anguish, the law furnishes no legal rule for measuring them; the amount to be awarded must necessarily rest largely in the discretion of the jury. In the absence of evidence to indicate that the amount awarded was the result of passion, prejudice, or corruption, or that the evidence has been disregarded, the verdict of the jury is conclusive, and will not be set aside as excessive, on appeal. Since it is for the jury and not for the court to fix the amount, a verdict will not be set aside merely because it is large, or because the reviewing court would have awarded less. R. C. L. vol. 8, § 215, p. 673, Southwestern Tel. & Tel. Co. v. Riggs (Tex. Civ. App.) 216 S. W. 403, and authorities there cited. Judgment in same case affirmed by our Supreme Court, 234 S. W. 875.

Having reached the conclusion that no reversible error in the trial of this cause has been shown, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Counsel for appellant has filed in this court motion for rehearing, and in the argument of such motion he complains of that part of our opinion which is as follows:

"Appellant, in this court for the first time, insists that the court erred in not defining the meaning of the term 'might reasonably have been anticipated.'

"So far as shown by the record, no timely objection was made to any part of the charge * * * the court was in no manner requested to define the term 'might reasonably have been anticipated,' nor does the motion for new trial filed by appellant assert that the court erred in failing to define such term. Under such circumstances, appellant cannot be heard in this court to assert that the trial court erred in not defining such term."

We confess we erred in making such statement. By article 2185, Revised Civil Statutes of 1925, it is provided that objections to the charge of the court shall in every instance be presented to the court before such charge is read to the jury, and that objections not so made and presented shall be considered as waived. It has been uniformly held by the courts that objections made to the charge where objection is required should appear of record on appeal or they will not be considered.

■ We were led into the error complained of by reason of the fact that in all records filed in this court prior to the one in the present case objections to the charge

were prepared in writing setting forth the several special objections, and such written objections were filed with the papers in the cause, and upon appeal such writing was copied into the record. This is the first time within the recollection of the writer that such objection was made to appear of record by a bill of exceptions. However, it may be made to so appear by bill of exception, and, when so made, it is entitled to consideration by the appellate court.

In this case appellant's objection to the charge referred to was in due time and manner preserved and carried into the record by bill of exception, but was overlooked by the writer in preparing our opinion. However, we passed upon the objection made to the failure of the court to define the term "might reasonably have been anticipated" used in his charge defining "proximate cause," holding that such term was not such a technical or legal term as is required to be defined by the court, and that any juror of ordinary intelligence could readily understand its meaning. We still adhere to such holding. The words used are words of ordinary use, and need not be defined. Oliver v. Forney Cotton Oil & Gin Co. (Tex. Civ. App.) 226 S. W. 1094; Alamo Iron Works v. Prado (Tex. Civ. App.) 220 S. W. 282; Westchester Fire Co. v. Dickey (Tex. Civ. App.) 246 S. W. 730; Bishop v. Millers' Indemnity Writers (Tex. Civ. App.) 254 S. W. 411; Texas Midland Ry. Co. v. Richey, 49 Tex. Civ. App. 409, 108 S. W. 732; Johnson v. W. H. Goolsby Lumber Co. (Tex. Civ. App.) 121 S. W. 883; Raley v. State, 47 Tex. Civ. App. 426, 105 S. W. 342.

In our original opinion, we set out the substance of an argument made by Mr. Hightower, counsel for defendant Zylicz, and also of the argument made by Mr. King supplementing the argument of Mr. Hightower. As shown by appellant, objection and exception to such arguments were preserved by bills of exception. The court in allowing such bills added thereto his qualifications, and we held that the bills as qualified presented no reversible error, and that, as appellant accepted them as qualified, it was bound by such qualification.

In its motion for rehearing, appellant insists that the bills of exceptions, notwithstanding the qualification of the court, do present reversible error, and that we erred in holding to the contrary.

After a more careful examination of the bill of exceptions, we have reached the conclusion that appellant's contention should be sustained. In this instance we agree with counsel for appellant that the qualification of the court to the two bills of exceptions states no legal reason why the arguments mentioned, made by Messrs. Hightower and King, were not erroneously and harmfully made. Both of the arguments mentioned were im-

properly made and calculated to improperly influence the jury to return its verdict for plaintiffs. Upon the state of the evidence disclosed by the record we cannot say that such arguments were harmless. The rule established by our courts on the subject of improper arguments to a jury is thus stated in Texas Jurisprudence, § 883: "With reference to improper remarks or argument of counsel, the rule appears to be settled that judgment will be reversed unless it affirmatively appears from the record that the improper argument was harmless." Blohm v. Krueger (Tex. Civ. App.) 297 S. W. 596; Missouri-Kansas-Texas Railway v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Texas Ind. Ins. Co. v. McCurry (Tex. Com. App.) 41 S. W.(2d) 215.

As shown by appellant's bill of exception, Mr. King, counsel for plaintiffs, in his closing argument said: "These gentlemen (referring to counsel for appellant) say: Oh, that doesn't amount to anything to a lady—doesn't amount to anything at all. No, that doesn't amount to anything—take it home to your or my wife."

Appellant in its motion for a new trial charged that such argument was wrongfully made to the injury of appellant, and, upon the refusal of the court to grant it a new trial because of such argument, it preserved its bill of exception to such refusal, and on appeal assigned such refusal as reversible error.

The court refused to approve the bill as presented by counsel, and qualified the same before signing it as follows:

"Likewise, counsel for defendant, Houston Electric Company, in their argument made before the argument complained of, argued to the jury that the plaintiff was only slightly injured; that she appeared hearty and well and that the scar complained of did not amount to anything, and the court was of the opinion that the argument complained of was in response to the argument so made by the counsel for defendant, Houston Electric Company.

"The court was further of the opinion that the verdict of the jury was not excessive and that the jury was not influenced in arriving at its verdict by the argument complained of."

In our original opinion we held that, as appellant accepted such bill of exception as qualified, it was in no position to dispute the truth of the qualification of the court. We also held appellant was in no position to complain of such argument, as it made no objection thereof at the time it was made and not until it filed its motion for a new trial.

Appellant in its motion for a rehearing insists that we erred in our holdings.

After a careful consideration of authorities, we have reached the conclusion that we erred

in our disposition of the complaint made by appellant of the argument. Dallas Railway & Terminal Co. et al. v. Smith et al. (Tex. Civ. App.) 42 S.W.(2d) 794, 795; Humble Oil & Refining Co. v. Butler (Tex. Civ. App.) 46 S.W.(2d) 1043, 1045.

In the Smith Case, counsel in argument to the jury said: "I don't believe there is one of you here who would see one of your own folks in an accident of that kind, yes, your own wife, but would feel you were entitled to pay, some compensation in money—there is no sufficient money in this world to cure and heal an injury of this sort. * * * I am sure * * * I would not go through it for fifty thousand or a hundred thousand, and I don't believe you would, gentlemen."

Again he said: "What would compensate you if your wife went through what this lit-. tle woman has gone through? * * * Give us what you think you would want your wife to have."

The court in reversing the case because of such argument held that such argument was an appeal to the prejudice of the jury, and calculated to induce them to abandon their position as fair and impartial jurors and to assume the position of a partisan or claimant in the case; that such argument was an appeal to the jury to apply an improper measure of damages contrary to that given in the charge; that such argument was calculated to prejudice the rights of appellant, citing Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435.

Continuing, the court said: "It has been held that where the argument is calculated to injure the rights of the complaining party and there is reasonable doubt of its harmful effect, the case must be reversed and the burden is not on the appellant to show that his rights were in fact prejudiced. Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 39 S.W.(2d) 1091; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765."

Relative to appellant's complaint of the. court in permitting Mr. King of counsel for the plaintiffs to introduce in evidence that part of appellant's answer which we have quoted in our opinion, as an admission of actionable negligence on the part of appellant, we said that such admission, if erroneous, was harmless, as no jury of ordinary intelligence could conclude that such pleading remotely tended to show an admission of actionable negligence on the part of appellant.

Mr. Gannon, counsel for appellant who prepared the answer of appellant and therein inserted that part of the answer admitted in evidence over his objection, and who no doubt clearly and accurately understood that such pleading had no tendency to show that appellant thereby admitted negligence on the part of appellant, says, in attacking our state-ment that no juror of ordinary intelligence could believe that such pleading tended to show an admission of appellant that it was guilty of actionable negligence:

"Counsel for the plaintiff and the trial court thought that the pleading was admissible as tending to show an admission against interest. Counsel for plaintiff so expressed himself in the trial court and this is shown by the bill of exceptions. He was able to bring an able and erudite trial judge to agree with him that the pleading was admissible in evidence because it tended to show a declaration against interest. And yet this court is unable to conceive of any juror of ordinary intelligence placing such a construction upon it. The court either pays a most unusual compliment to the intelligence of the ordinary juror, or brings an awful indictment against the mental capacity of plaintiff's able counsel and the learned and respected trial judge who admitted the pleadings in evidence."

Evidently Mr. Gannon, who prepared the answer of appellant, agrees with us that such pleading could in no sense be thought by any one of ordinary intelligence to be an admission by appellant of negligence, or else he would not have penned such plea. Why, then, attack the writer for reaching the same conclusion? Counsel states that "this court either pays a most unusual compliment to the intelligence of the ordinary juror, or brings an awful indictment against the mental capacity of plaintiff's able counsel and the learned and respected trial judge who admitted the pleadings in evidence." If it be conceded that the writer has paid a compliment to the intelligence of the ordinary juror, and has brought an indictment against the mental capacity of counsel for plaintiff and the trial judge, by saying that the plea had no tendency to show an admission of the appellant that it was guilty of negligence, is it not a fact that the writer has only followed the conclusion reached by counsel who prepared the pleading? However, in answer to appellant's contention that his complaint of the admission of the pleading in evidence was well made because it appears that counsel for plaintiff and the judge admitted such pleading as tending to show an admission of negligence on the part of appel-. lant, the writer is aware that learned counsel and trial judges sometimes make some startling propositions which have no reason in their support. In such cases, this court is not called upon to give credence to such propositions. The writer cannot conceive that, had counsel or the trial judge given the pleading the careful consideration it should have had, they could not have reasonably thought that it tended to show admission of negligence on the part of appellant.

Counsel for appellant with seeming earnest-

ness contends that the fact that counsel for the plaintiffs stated that he offered such pleading as an admission of negligence on the part of appellant, and the fact that the trial judge, after such statement was made, admitted such pleading in evidence, would probably lead the jury who had such unambiguous pleading before them to the belief that it was an admission of negligence.

The majority are still of opinion that no person of ordinary intelligence having such pleading before him could believe that it constituted an admission of negligence on the part of appellant. Therefore its admission in evidence was harmless.

We have reached the conclusion that, because of the wrongful arguments made to the jury by counsel, which we have above discussed, the judgment heretofore rendered by this court should be set aside, and the judgment of the trial court should be reversed and the cause remanded, and it is accordingly so ordered.

Motion granted.

PLEASANTS, C. J. (dissenting on motion for rehearing).

I agree with my associates that the judgment in this case should be reversed and the cause remanded because of the improper argument of attorneys for appellees set out in the opinion of Justice LANE, but I am not in accord with the holding in that opinion that the ruling of the trial court on the objection of appellant to the introduction in evidence as "an admission of negligence," of that portion of appellant's answer set out in the opinion was not error.

It seems clear to me that this ruling of the trial court was erroneous, and cannot be sustained on the ground stated in Justice LANE'S opinion. If this had been the only erroneous ruling presented by appellant, and the evidence on the question of negligence had not been so sharply conflicting, it may be such error could have been held harmless, but upon this record it cannot be so held.

I am further of opinion that the refusal of the court, in instructing the jury upon the question of proximate cause, to define the term "might reasonably have been anticipated" by adding thereto the words "in the exercise of ordinary care," was error which might of itself have been sufficient to require a reversal of the judgment.

These observations are probably unnecessary, since I agree that the motion for rehearing was properly granted and the judgment reversed, but I feel constrained to dissent from what seems to me to be erroneous conclusions of law expressed in the majority opinion.